UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RAMON ORTIZ PEREZ,

Petitioner,

v.

CLARK DUCART,

Respondent.

Case No. 17-cv-06398-RS

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

Ramon Ortiz Perez seeks federal habeas relief from his state convictions. For the reasons set forth below, the petition for such relief is DENIED.

## BACKGROUND

In September 2009, 16 year-old Perez stabbed to death Adam Esparza, a member of the Norteño gang. At the time, Perez was a member of Sur Santos Pride ("SSP"), a local Sureño street gang.

On September 23, 2009, Perez was in a Jack-in-the-Box with fellow gang member Eduardo Yanez and gang affiliate, Felipe Luna. Perez had a three-dot tattoo next to his left eye identifying him as a Sureño. Perez and his friends were waiting for their food when Esparza, entered with his friend Robert Lee. Lee was a member of the "Crips" gang. Perez recognized Esparza was a member of the Norteño gang because of the amount of red he was wearing. Esparza saw Perez's tattoo and started laughing. He proceeded to "throw the four" at Perez and his friends to represent he was a Norteño. (Ex. 14 (State Appellate Opinion) at 3.) Esparza

walked past Perez saying "[o]h scrap. Scrap," a derogatory term for Sureños. (*Id.*) According to Yanez, Perez and the group let the insults go because they thought "[h]e's a little kid." (*Id.*) Esparza then left the restaurant, pulled something out of the trunk of Lee's car, and returned to the restaurant wearing a red hat. Esparza continued calling Perez derogatory names and "mad-mugging" him. (*Id.*) Perez answered back calling Esparza "buster," a derogatory term for a Norteño. (*Id.*) Esparza continued calling Perez a "scrap." Perez responded "Fuck that shit. Let's go outside dog." (*Id.*) Perez and Esparza went outside with their respective friends. A fist-fight ensued between Perez and Esparza. Esparza was larger and gave Perez a bloody nose.

After the fight, both parties claimed victory. Perez walked towards his friends who were heading back inside the restaurant. Esparza walked toward his car while taunting Perez for losing the fight. Perez then started walking toward the car, smiling despite bleeding from the face. Perez reached through the passenger window and grabbed a pack of cigarettes, claiming they were now his. Lee, who was now in front of the car, told Perez the cigarettes belonged to him. Yanez told Perez to return the cigarettes because "some Crips are cool with us." Perez tossed the cigarettes on the front of the hood, appearing "kind of mad…and cool, just in between." (*Id.* at 5.) Esparza got into the passenger seat of the car and continued to shout insults through his window while Perez started to head back towards the restaurant behind his friends.

Perez turned, walked back, and stabbed Esparza quickly and repeatedly through the car window with a butterfly knife. Lee later told an investigating officer, Officer Dong, that Perez shouted "sur" during the stabbing. (*Id.*) Officer Dong described this as a way of "proclaiming who he's affiliated with" while he was stabbing Esparza. (*Id.*)

Lee drove away as quickly as possible and found construction workers three-quarters of a mile away who called an ambulance. Perez remained in the parking lot for a few seconds before throwing the bloody knife onto the freeway and running away. Witnesses who saw Perez running away described Perez as having "a really stupid grin, kind of laugh." (*Id.* at 6.) Police detained Perez the next day after a high-speed-mile-and-a-half vehicle chase through a residential neighborhood. Perez crashed the car, ran away, and was found hiding in a closet of a house he had

1   broken into.

2       Perez argued at trial he was guilty of the lesser offense of manslaughter, not murder.

3   During the trial, Officer Gallardo testified on behalf of the prosecution. He testified to general

4   background knowledge of SSP and the Sureños. Officer Gallardo also testified to case-specific

5   details including knowledge of Perez's prior offenses based on hearsay not admitted by the court.

6   Perez called Dr. Minagawa to testify on his behalf. Dr. Minagawa assumed Perez was part of the

7   SSP street gang and testified to what Perez's tattoos meant. Dr. Minagawa also testified to the

8   significance of symbols and phrases such as "Sur Trece." Perez admitted at trial he was a member

9   of SSP. Yanez, a witness called by the state, testified to violent confrontations between Sureños

10  and Norteños.

11      On October 11, 2012, a jury found Perez guilty of second-degree murder and found true

12  enhancements for gang activity and personal use of a knife in commission of the offense. Cal.

13  Penal Code §§ 186.22(b)(1)(C), 187, 12022(b)(1); (Ex. 1 Clerk's Transcript ("CT") at 1 CT 282-

14  86.) In March 2015, Perez filed a petition for a writ of habeas corpus and a direct appeal of the

15  judgment with the state court of appeal. (Ex. 6.) The court denied the petition and affirmed the

16  conviction in September 2015. (Ex. 7.) Perez appealed both, and in January 2016, the California

17  Supreme Court denied review of the habeas petition, but granted review of the conviction,

18  deferring further consideration of the appeal pending its upcoming decision in *People v. Sanchez*,

19  63 Cal. 4th 665 (2016). (Exs. 9, 10.) After *Sanchez* was decided, the court remanded the case to

20  the court of appeal for reconsideration in light *Sanchez*. (Ex. 11.) In February 2017, the court of

21  appeal reversed the gang enhancement and affirmed the judgment in all other respects. (Ex. 14.)

22  The California Supreme Court denied review on May 10, 2017, and Perez filed this petition for

23  writ of habeas corpus on November 2, 2017. In this petition Perez argues the jury instructions

24  presented at trial were inadequate, and the Confrontation Clause violations during trial constituted

25  prejudicial error.[1]

26  ────────────────────

27  [1] Although Perez advanced a claim for ineffective assistance of counsel in his prior petition to the
    state court, he does not do so here and so the state court's ruling denying relief on that claim

**STANDARD OF REVIEW**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

_____

stands.

**DISCUSSION**

**A. Jury Instructions**

Perez claims the trial court violated his rights by (1) giving a flawed manslaughter instruction, and (2) inadequately limiting consideration of gang evidence during jury instruction. To obtain federal collateral relief for errors in the jury charge, a petitioner must show the disputed instruction by itself so infected the entire trial that the resulting conviction violates due process. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991). The instruction may not be judged in artificial isolation but must be considered in the context of the instructions as a whole and the trial record. *Id.* In other words, a federal habeas court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process. *United States v. Frady*, 456 U.S. 152, 169 (1982) (citing *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)).

*1. Manslaughter Instruction*

Perez admits his entire defense was he acted in the "heat-of-passion" and, therefore, is guilty of voluntary manslaughter instead of second-degree murder. The trial court instructed the jury on the elements of heat-of-passion manslaughter as a lesser included offense of murder pursuant to CALCRIM No. 570.

Perez does not dispute this instruction. Instead, Perez argues the special instruction given on provocation pursuant to CALCRIM No. 522B was erroneous and prejudicial. CALCRIM No. 522B, as given by the trial court, states, "a person who instigates a fight cannot claim the benefit of provocation as to reduce murder to manslaughter." (Ex. 14 at 9.) Perez believes this instruction prevented the jury from deciding relevant factual questions raised by the evidence, namely, whether Perez was culpably responsible for the fight in which he killed the victim.

Perez's argument fails because CALCRIM No. 522B, as recited by the trial court, is a correct statement of California law. The rule comes from *People v. Johnston*, 113 Cal. App. 4th 1299 (2003). In *Johnston*, the defendant arrived at a house containing his ex-girlfriend and the victim. *Id.* at 1304. The defendant yelled at the victim inside, challenging him to a fight. *Id.* The victim came outside, accepted the challenge, and was stabbed by the defendant in the fight. *Id.* at

1305. The defendant was charged with second-degree murder. *Id.* When the defendant appealed arguing he was only guilty of voluntary manslaughter because the victim charged at him, the appellate court ruled that the defendant was culpably responsible because he was the one who instigated the fight. *Id.* at 1313. The court continued stating, "[the defendant] cannot be heard to assert that *he* was provoked when [the victim] took him up on the challenge. Defendant was culpably responsible" for the altercation. *Id.* (emphasis in original). In other words, CALCRIM No. 522B did not authorize the jury to find Perez guilty of murder only because Perez instigated the fight, without finding Perez also culpable for the fight. Under California law, if the jury finds a defendant instigated a fight, the defendant is culpably responsible for the fight. An additional jury instruction is not needed.[2]

Even if the trial court did err when instructing the jury with CALCRIM No. 522B, the instruction, evaluated in light of the instructions as a whole, did not so infect the entire trial that Perez's due process right was violated. *Estelle*, 502 U.S. at 72. Perez requested instruction CALCRIM No. 522A, which was given to the jury, stating "[provocative] conduct may be physical or verbal, and it may [be] comprised of [*sic*] a single incident or numerous incidents over a period of time." (Ex. 14 at 8.) The jury, therefore, could find that Perez instigated the initial fight, cooled off, and was then provoked by another incident before stabbing Esparza. In other words, Perez's defense that he was provoked by Esparza's actions, either before or after the first fight, and killed in a "heat-of-passion" was not precluded. They jury simply did not agree.

---

[2] Perez's citations to Supreme Court precedent are not to the contrary, as the jury here was not relieved of its duty to find every fact necessary to establish guilt. In *United States v. Gaudin*, 515 U.S. 506, 522-23 (1995), the Court found a constitutional flaw where a trial judge decided on the materiality of a defendant's false statements, an element of the crime, and refused to allow the jury to pass on the materiality element itself. In contrast, the court here did not make any decision on an element of the crime, it only instructed the jury as to what California law required. Similarly, Perez was not denied the opportunity to present the defense of voluntary manslaughter that would run afoul of *Matthews v. United States*, 485 U.S. 58, 63 (1988). There, the Court ruled that even if a defendant denies his or her culpability for any element of a crime, he or she is entitled to a jury instruction as to any recognized defense for which there exists sufficient evidence for a reasonable jury to find in the defendant's favor. The state court proceedings were consistent with this established federal precedent.

Additionally, "[t]he provocative conduct of the victim must be sufficiently provocative that it would cause an ordinary person of average disposition to act rashly or without due deliberation and reflection." *People v. Manriquez,* 37 Cal. 4th 547, 583-84 (2005). Under California law, slanderous words by themselves are not legally sufficient provocation that would cause an ordinarily reasonable person to become sufficiently enraged to reduce murder to manslaughter. *See Id.* at 586; *People v. Najera*, 138 Cal. App. 4th 212, 226 (2006) ("words of reproach, however grievous they may be" are not grounds to reduce an unlawful killing to manslaughter (citing *People v. Wells*, 10 Cal. 2d 610, 623 (1938))). Here, Esparza provoked Perez through derogatory words as Perez started to walk back to the restaurant after the initial fight. A reasonable jury could not find Perez acted in a heat-of-passion because even if the jury found Perez was provoked, Esparza's actions were not provocative enough to cause an ordinary person of average disposition to kill him. *Manriquez*, 37 Cal. 4th at 585-86 ("Although the provocative conduct may be verbal . . . such provocation must be such that an average, sober person would be so inflamed that he or she would lose reason and judgment." (internal quotation marks omitted)). A reasonable jury, therefore, could not agree with Perez's argument that he was provoked into committing manslaughter, not murder. The state court's reasonable denial of Perez's claim is therefore entitled to AEDPA deference.

### 2. Instructions Involving Gang Evidence

Perez next argues the trial judge erred in giving CALCRIM No. 1403 to the jury. CALCRIM No. 1403 instructs the jury they may only consider evidence of gang activity in assessing whether the defendant acted with the intent, purpose, and knowledge required to prove the gang related enhancement. (Ex. 14 at 36.) Further, CALCRIM No. 1403 states, "[a]lso, you may consider evidence of gang activity to decide whether the defendant had or did not have a motive to commit the crime charged and whether or not the defendant acted in the heat of passion." (*Id.*) Finally, CALCRIM No. 1403 precludes the jury from considering gang evidence for any other purposes, specifically including whether the person is of bad character, or whether they have the disposition to commit crime. (*Id.* at 36-37.) Perez submits that allowing the jury to

consider evidence of gang activity while deciding whether Perez had a motive to commit the crime or acted in the heat-of-passion permitted the jury to conclude Perez did not act in a heat-of-passion because he was in a gang. Perez argues that this permissive inference violated his right to due process.

The instruction must be examined as a whole, in conjunction with other instructions given and the entire trial record. *Estelle*, 502 U.S. at 72. The end of CALCRIM No. 1403 tells jurors they may not consider gang evidence for determining whether Perez is of bad character or has the disposition to commit the crime. The instruction, therefore, does not allow the jury irrationally to conclude gang members cannot kill in a heat-of-passion because they typically have violent dispositions. The instruction only allows the jury to conclude that Perez's gang membership was a motive for his crime. Perez cites no authority that says gang evidence cannot be examined when a jury determines motive or intent. Further, even if the instruction was erroneous, it did not infect the entire trial so as to violate Perez's right to due process. *Estelle*, 502 U.S. at 72. Perez's own evidence and the testimony of other witnesses showed Perez was a member of a violent gang. The evidence was limited by an instruction that it was not to be used to evaluate Perez's character or criminal propensity. "Crimes" includes second-degree murder as opposed to manslaughter. Perez, therefore, does not demonstrate the instruction "grievously" wronged him. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Since the trial judge properly limited the jury's consideration of gang evidence, the state court reasonably denied Perez's claim and is entitled to AEDPA deference.[3]

---

[3] Perez's invocation of Supreme Court precedent is again not to the contrary. Perez contends the Court held in *Cty. Court of Ulster Cty. v. Allen*, 442 U.S. 140, 156-57 (1979) that a jury instruction authorizing an irrational inference violates due process. While true, there is nothing in the record to suggest the jury instruction at issue authorized such an inference. Indeed, the *Allen* Court found constitutional the application of a New York statute that provided the *permissive* presumption that presence of a firearm in an automobile was evidence of its illegal possession by all occupants because the jury was instructed that they were free to ignore the presumption and that they were to consider all the circumstances tending to support or contradict the permissive inference of firearm possession by any of the defendants. *Id.* at 160-62. Here, the jury was given such a permissive presumption as evidenced by the language "you *may* consider evidence[.]" (Ex. 14 at 36 (emphasis added).) The jury was free to credit or reject the inference from the gang evidence to decide whether Perez had or did not have a motive to commit the crime charged and whether or

**B. Confrontation Clause**

Perez claims the trial court violated his Sixth Amendment right of confrontation by (1) admitting testimony from the prosecution's expert on Perez's gang membership, and (2) denying Perez's request to cross-examine the prosecution's gang expert about Perez's out-of-court statements.

The admission of evidence is not subject to federal review unless a specific constitutional guarantee is violated or the error is of such magnitude that the result is a denial of the fair trial guaranteed by due process. *Henry v. Kernan*, 197 F.3d 1021, 1031 (9th Cir. 1999). Only if there are no permissible inferences that the jury may draw from the evidence can its admission violate due process. *Jammal v. Van De Kamp*, 926 F.2d 918, 920 (9th Cir. 1991). The Confrontation Clause of the Sixth Amendment provides that in criminal cases the accused has the right to "be confronted with the witnesses against him." U.S. Const. amend. VI. This includes any "testimonial" statements, whether in-court or out-of-court, introduced at trial. *Crawford v. Washington*, 541 U.S. 36, 51-52 (2004). While the ultimate goal of the Confrontation Clause is to ensure reliability of evidence, it is a procedural rather than a substantive guarantee. *Id.* at 61. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination. *Id.*

Confrontation Clause claims are subject to harmless error analysis. *United States v. Nielsen*, 371 F.3d 574, 581 (9th Cir. 2004). For purposes of federal habeas corpus review, the standard applicable to violations of the Confrontation Clause is whether the inadmissible evidence had an actual prejudicial effect upon the jury. *See Hernandez v. Small*, 282 F.3d 1132, 1144 (9th Cir. 2002) (citing *Brecht*, 507 U.S. at 637).

---

not he acted in the heat of passion. *Id.* at 157. It is only where there is no rational way the trier could make the connection permitted by the inference that there is any risk that an explanation of the permissible inference to a jury, or its use by a jury, has caused the jury to make an erroneous factual determination. *Id.* Such was not the case here, where there was overwhelming evidence regarding gang motivation for the killing and the instruction that the jury was not to consider the gang evidence to infer Perez's bad character.

*1. Admission of Prosecution's Expert Testimony*

The prosecution called Officer Gallardo to testify as an expert on general background information regarding SSP and Sureños, the number of SSP members, and Perez's prior offenses. Under California law, expert witnesses may not rely on inadmissible hearsay when testifying regarding case-specific information. *People v. Sanchez*, 63 Cal. 4th 665, 670-71 (2016). Officer Gallardo's expert testimony was based on hearsay in the form of police reports. (Ex. 14 at 25-31.) Any testimony regarding case-specific hearsay about Perez or Perez's actions not based on admissible hearsay, therefore, should have been excluded from the trial. Perez further argues Officer Gallardo's testimony admitted in error had an actual prejudicial effect on the jury. *See Hernandez*, 282 F.3d at 1144 (citing *Brecht*, 507 U.S. at 637).

Notably, only Officer Gallardo's case-specific testimony about Perez was admitted in error. The background testimony, including information about the SSP, the rivalry between Sureños and Norteños, and that SSP identified with the Sureños, was not admitted in error under California law because background information not related to a particular event or participants in the trial may be relied on by experts. *See Sanchez*, 63 Cal.4th at 676. Since it was not error to admit background testimony, Perez cannot claim it violated his Fifth Amendment rights.

Instead, Perez claims Officer Gallardo's testimony regarding Perez's prior offenses and membership in SSP were not harmless. However, Perez fails to identify any of Officer Gallardo's case-specific hearsay testimony that was not repeated by another witness's proper testimony. Perez himself admitted he was in a gang. (Ex. 14 at 33.) Yanez testified to other violent crimes committed by the gang, including his own stabbing in jail. (*Id.* at 35, 41.) Dr. Minagawa, Perez's own witness, testified to Perez's tattoos signaling his devotion to the gang. (*Id*. at 34-35.) Officer Gallardo did not tell the jury anything they would not have otherwise heard. Since the jury had overwhelming evidence beyond the case-specific hearsay elicited from Officer Gallardo's testimony, the trial court's errors did not have a substantial or injurious effect or influence in determining the jury's verdict. *Brecht*, 507 U.S. at 627. The state court's rejection of this claim for this reason was reasonable and is entitled to AEDPA deference.

*2. Cross-Examination of Prosecution's Expert*

Officer Gallardo testified on behalf of the prosecution to his belief that Perez shouted "sur" while stabbing Esparza based on Lee's statements to police.[4]  (Ex. 14 at 42.)  On cross-examination, though, Perez was not allowed fully to cross-examine Officer Gallardo as to whether this belief was reasonable.  Specifically, the trial judge allowed Perez to cross-examine Officer Gallardo regarding why he credited Lee's statements.  When Perez attempted to illicit the fact that Officer Gallardo knew Perez told the police he was angry and not thinking clearly when he stabbed Esparza, however, the trial judge sustained the prosecution's objection to the line of questioning.

Perez believes the trial judge erred in sustaining that objection because Officer Gallardo admitted to reading the transcript of Perez's interview with police.  The transcript was then part of the police records on which Officer Gallardo based his opinion. (*Id.*)  During the interview Perez said he reacted personally when he stabbed Esparza and was not thinking. (*Id.* at 45.)  Perez argues that he should have been allowed to cross-examine Officer Gallardo as to why he discounted Perez's interview, which tended to show Perez was not thinking clearly when stabbing Esparza, and credited Lee's statements after Officer Gallardo admitted "it concerned him that Lee gave some misleading statements to police . . . ."  (*Id.* at 43.)

As stated, Confrontation Clause claims are subject to harmless error analysis. *Nielsen*, 371 F.3d at 581.  For his claim to succeed, Perez would need to show an actual prejudicial effect upon the jury. *See Hernandez*, 282 F.3d at 1144 (citing *Brecht*, 507 U.S. at 637).  Even assuming the lower court erred in restricting defense counsel from cross-examining Officer Gallardo, the state court still concluded the error was harmless beyond a reasonable doubt. (Ex. 14 at 44-5.)

Perez hoped to impeach Officer Gallardo by having him convey to the jury Perez's statements to police.  Even though Officer Gallardo did not have to testify about Perez's statements, Dr. Minagawa later told the jury Perez told the police that he was not thinking when he

---

[4] Shouting "sur" tended to show Perez killed for his gang and not in a heat-of-passion.

stabbed Esparza. (*Id.* at 45.) This rendered Officer Gallardo's potential testimony cumulative by presenting to the jury the essence of Perez's statements to police. Perez also argues cross-examination would have shown the jury that Officer Gallardo did not have a convincing reason to credit Lee's statements over those of Perez. Perez contends that without a reason for crediting Lee's statements over his, Officer Gallardo's entire opinion that Perez killed to advance in his gang would be discredited. Perez, however, did have the opportunity to cross-examine Officer Gallardo with regard to Lee's statements. Through this cross-examination, Perez had the opportunity to discredit Lee's account thereby discrediting Officer Gallardo, and later did present Perez's account through Dr. Minagawa. (*Id.* at 45.) Thus, Perez had the opportunity to discredit Officer Gallardo's belief in Lee's statements.

Finally, the state court reasonably concluded Perez did not show Officer Gallardo's credibility had an actual prejudicial effect on the jury. Dr. Minagawa testified that he believed Perez killed Esparza because Perez was provoked, and he acted on an emotional level. (*Id.* at 45.) As instructed, the jury was free to reject Officer Gallardo's opinion regarding whether Perez had fatally stabbed Esparza to benefit his gang, and to accept Dr. Minagawa's testimony that the stabbing was the result of Perez's personal emotional reaction. Moreover, a reasonable jury could reject Dr. Minagawa's opinion in light of the copious amounts of evidence regarding the gang context surrounding the stabbing. Perez and Esparza were strangers who only knew the other as a member of a rival gang. They fought after calling each other derogatory gang terms. Any reasonable jury could have decided that the explicit gang overtones were enough to show Perez acted for his gang and not because of childhood trauma. Further, as discussed above, even if Dr. Minagawa's opinion was correct, a reasonable jury could still find Perez guilty of second-degree murder because Esparza's actions were not provocative enough to make a reasonable person kill in the heat-of-passion under California law. *See Manriquez,* 37 Cal. 4th at 583-84. For these reasons the state court's denial of Perez's claim was reasonable and entitled to AEDPA deference.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### C.  Cumulative Impact

Perez claims that the cumulative effect of the errors at trial violated his right to due process.  This claim was rejected on appeal.  In some cases, although no single trial error is sufficiently prejudicial to warrant reversal, the cumulative effect of several errors may still prejudice a defendant so much that his conviction must be overturned.  *See Alcala v. Woodford*, 334 F.3d 862, 893-95 (9th Cir. 2003).  Where there is no single constitutional error, nothing can accumulate to the level of a constitutional violation.  *See Mancuso v. Olivarez*, 292 F.3d 939, 957 (9th Cir. 2002).

The state court reversed the jury's findings as to gang enhancement allegations because of the trial court's errors.  For the reasons stated above, however, there was no prejudicial error committed by the state court that warrants a reversal of Perez's second-degree murder charge.  The state court's rejection of this claim was reasonable and is entitled to AEDPA deference.

### CONCLUSION

The state court's denial of Perez's claims did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Accordingly, the petition is DENIED.[5]

A certificate of appealability will not issue.  Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Perez may seek a certificate of appealability from the Ninth Circuit Court of Appeals.  A separate judgment will be entered in favor of respondent.

---

[5] Since this matter is suitable for disposition without oral argument, Perez's request for oral argument under Habeas Local Rule 2254-8 (Dkt. 17-1) is denied.  Similarly, Perez's motion to expand the record under Rule 7 of the Rules Governing Section 2254 Cases in the United States District Courts (Dkt. 18) is denied, as the requested documents are unnecessary to resolve the petition.

**IT IS SO ORDERED**.

Dated: June 28, 2019

RICHARD SEEBORG
United States District Judge